STANTON, PROS. ATTY., v. TAX COMMISSION OF OHIO
ET AL.

*Corporations—Company may designate place of location or where principal business transacted—Section 8625 et seq., General Code—Place where located to be fixed by articles of incorporation—Selection of place exclusive privilege of corporation—Designation of location in charter determines place of taxation—Designation in articles fixes residence, although principal business transacted elsewhere—Corporation and public bound by articles until lawfully amended—Corporation's right to choose situs or domicile inalienable—Construction of Ohio statutes by Ohio courts paramount—Designation in articles of place of location, final and conclusive—Payment of taxes determines that principal office is domicile—Judicial notice of new corporation act—Inference that previous policy of designating principal place of business continues.*

1. Sections 8625 to 8629, General Code, providing for incorporation of companies doing business in state, and requiring company to designate place where it is to be located or its principal business transacted, confers on company choice of designating either place, and corporation is accountable to state for designation chosen.
2. Place where corporation is to be located must be fixed and established by designation in articles of incorporation.
3. Under Sections 8625 to 8629, General Code, selection of place where corporation is to be located is exclusive privilege of corporation, to be exercised in conformity to law, and which cannot be interfered with by outside agency.
4. Under Sections 8625 to 8629, General Code, designation by corporation in charter, an instrument of public record, of place where corporation is located makes such place known to public, and compels corporation publicly to reveal name of place where it is liable to be taxed.
5. Under Sections 8625 to 8629, General Code, providing for incorporation of companies and recording and filing of articles of incorporation, designation in articles as to place where corporation is located fixes its residence, though at another location its principal business is transacted.

App.]        Stanton, Pros. Atty., *v.* Tax Comm.

6. Under Sections 8625 to 8629, General Code, corporation and public are bound by articles of incorporation with reference to all stipulations required by law to be set forth in articles, such as name, purpose, and amount of capital of corporation, and, until amendment is made in conformity to law, such designations are unalterable and establish status of corporation.

7. Under Sections 8625 to 8629, General Code, right of corporation to choose situs or domicile is inalienable.

8. Construction of Ohio statutes by Ohio courts is paramount.

9. Under Sections 8625 to 8629, General Code, providing for recording of articles of incorporation, designation in articles of place where corporation is to be located is final and conclusive, irrespective of motives, purposes, or consequences, and only by act of corporation itself under provisions of law can its own selection as to its domicile be disputed or denied.

10. In determining location of corporation for purpose of taxation, payment by corporation on theory that place where its principal office is located constitutes place of its domicile and situs for collection of taxes on intangible personal property, and acceptance of taxes for several years is significant recognition of corporate claims as to its situs, and of some force in determining question.

11. Court of Appeals takes judicial notice of recent passage by both branches of Legislature of new corporation act which vitally changes essential principles of existing law.

12. New corporation act, providing that domicile of corporation is that designated in its articles as place where its principal office is located, though not yet approved by Governor, raised inference, in absence of express provision to contrary, that Legislature continued previous political policy with respect to requirements for articles of incorporation as to situs of principal place of business.

(Decided March 7, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. E. C. Stanton,* prosecuting attorney, and *Mr. H. E. Parsons,* for plaintiff in error.

*Messrs. Wilkin, Cross & Daoust, Messrs. Holding, Masten, Duncan & Leckie,* and *Messrs. Tolles, Hogsett & Ginn,* for defendant in error.

SULLIVAN, P. J. This cause comes into this court on error from the court of common pleas. The controlling question is whether taxes on intangible personal property of the Union Mortgage Company are payable at Mentor, Lake county, Ohio, the place designated in the amended articles of incorporation as the place where its principal office is located, and where the corporation holds its meetings under corporate action, or at Cleveland, Cuyahoga county, Ohio, the place where the principal part of its business is transacted and where it maintains, in addition to the office at Mentor, Ohio, as designated in the charter, a business office; it being conceded that the business of the corporation is not only transacted in Cuyahoga and Lake counties, but in other counties of the state, and in other states of the Union.

The plaintiff in error contends that the aforesaid taxes are assessable and collectible at Cleveland, Cuyahoga county, where the mortgage company maintains a business office in which it transacts the principal part of its business. He further asserts that the location at Mentor is a shift and a device, false in fact as well as law, and that it is maintained for the purpose of evading taxation in Cuyahoga county, where the burden would be more onerous than at Lake county.

The case at bar is one of numerous cases involving a similar issue, and the judgment of the court in this case will govern the issues in the other cases of similar character.

Section 8625 of the General Code makes provision for the incorporation of companies doing business in Ohio, and the requirements of this section are that the articles of incorporation shall be subscribed and acknowledged before a proper officer, with due solemnity, and shall state the name of the corporation, the place where it is to be located, or its principal business transacted, the purpose for which it is formed, and the amount of its capital stock and the number of shares into which it is divided.

Section 8626 provides for the acknowledgment, and requires that the official character of the officer shall be certified by the clerk of the court of common pleas of the county wherein the acknowledgment is taken. Thereupon the articles of incorporation shall be filed with the secretary of state, who shall record them, as well as record all certificates relating to the corporation thereafter filed in the office.

Section 8627 provides that, upon the filing of the articles of incorporation, the persons who subscribed them, their associates, successors, and assigns, by the name and style provided therein, shall be a body corporate, with succession, power to sue and be sued, contract and be contracted with; also, unless specially limited, to acquire and hold all property, real or personal, necessary to effect the object for which it is created, and at pleasure convey it in conformity with its regulations and the laws of this state.

The character and strength of these requirements are indicated by Section 8628, which prohibits the secretary of state from filing or recording "any articles of incorporation wherein the corporate

202 OHIO APPELLATE REPORTS.

Stanton, Pros. Atty., v. Tax Comm. [26 Ohio

name is likely to mislead the public as to the nature or purpose of the business its charter authorizes, nor if such name is that of an existing corporation, or so similar thereto as to be likely to mislead the public, unless the written consent of the existing corporation, signed by its president and secretary, be filed with such articles.''

Section 8629 provides, in substance, that a copy of the articles of incorporation shall be *prima facie* evidence of the existence of the corporation therein named.

These sections are quoted for the purpose of showing the intent and object of the Legislature that the requirements of the statute import the verity of the stipulations in the articles of incorporation, made in obedience to legislative mandate. When the lawmaking body required the designation of ''the place where it is to be located, or its principal business transacted,'' its clear purpose must have been to publish and make known the legal residence of the corporation, or, in other words, the place where it is to be located. It will be observed that the word ''or'' is the connecting link between ''the place where it is to be located'' and ''its principal business transacted.'' This language confers a choice of either one or the other upon the corporation, and in the case at bar it chose the former, and, by reason of such designation, it is accountable to the state and the public dealing with it for the designation of locality which it has chosen to make by its insertion and designation in the articles of incorporation. The burdens that may ensue from such a selection, as well as the benefits, accrue to the corporation. Today either might be a burden, and to-

morrow a benefit, all depending upon the action of the local or state authorities with respect to legislative acts designed to affect the corporation, so that if, as is claimed by plaintiff in error, the amendment changing the location from Cleveland to Mentor is to evade taxation, such act might be frustrated by a legislative act proceeding either from a local or state body.

From a review of the authorities it is clear that the place where the corporation is to be located must be fixed and established, and there is only one way that this may be done, and that is by designation in the articles of incorporation. Under the law this selection is the exclusive privilege of the corporation itself. It is a right concerning which there can be no interference by any outside agency. It is a prerogative that exists in a corporation with respect to its residence with the same inherent force that it exists in a person. All that is necessary is conformity to the requirements of law as established by the Legislature and interpreted by our courts.

By the designation in the charter, an instrument of public record throughout the state, the place where the corporation is located becomes known to the public, and that, under all the authorities, is more vital than that the corporation be taxed where it does the greatest amount of its business. This designation compels the corporation publicly to reveal and record another important fact, and that is the name of the place where it is liable to be taxed. This fact the public is entitled to know.

This doctrine was laid down in *Western Transportation Co.* v. *Scheu,* 19 N. Y., 408, and on page 411 of the opinion the court says:

"To avoid disputes upon the subject was, I apprehend, one motive for requiring the location to be fixed by the certificate. It is not important that a corporation should be taxed where it does the greatest amount of its business; but it is important that the place where it is liable to be taxed should be known."

The designation in the articles of incorporation as to the place where it is located fixes and establishes its residence, even though at another location its principal business is transacted. The corporation and the public are bound by this designation, not only with reference to the place of location, but with reference to all other stipulations required by law to be set forth in the articles of incorporation, such as the name of the corporation, the purpose for which it is formed, the amount of the capital stock, and the number of shares thereof. Until an amendment is made in conformity to law, these designations are unalterable and establish the status of the corporation with respect to these various questions. In other words, the organization is incorporated in the articles. Thus the charter itself imports a solemnity which characterizes the personality of the corporation itself, and, inasmuch as the state is its sponsor and creator, the articles of incorporation are impregnated with a credence which fixes the corporation's identity and individuality. Hence the impregnable character of the designations in the articles of incorporation, and especially the designation by which the corporate body itself chooses its own place officially to reside, locate, and live. This right to choose a situs or domicile is inalienable, and obviously was recognized by the lawmaking body of the state when it

incorporated into legislative expression this ancient principle of law by the passage of Section 8625 of the General Code.

In addition, this doctrine seems to be the basis for the decision of the Supreme Court of Ohio in the case of *Pelton* v. *Transportation Co.*, 37 Ohio St., 450, wherein McIllvaine, J., in an opinion which from its rendition has stood adamant against all assaults because of its keen analysis of the question and the soundness of the reasoning employed, gave an interpretation that has attracted the attention of judicial tribunals both in this and other states of the Union, and of the tribunals of federal jurisdiction as well. To show the breadth and comprehensibility of the opinion, we quote the paragraphs of the syllabus in full, except paragraph 4:

"A certificate of incorporation which, under the statute, specifies the place where the principal office of the company is to be located, is conclusive as to the location of such office.

"Such office is to be regarded as the residence of the corporation within the meaning of Section 4 of the tax law of April 5, 1859, as amended April 8, 1865 (S. & S., 756), which provides that certain personal property 'shall be entered for taxation in the township or town in which the person to be charged with taxes thereon resides at the time of listing the same by the assessor.'

"A corporation whose principal office is located in a specified township and without the limits of a city, may, if the city limits be so extended as to include the site of the office, remove the same to some other part of the township and thus avoid municipal taxation.

"Personal property other than merchants' and manufacturers' stock, or articles enumerated in the

206        OHIO APPELLATE REPORTS.

Stanton, Pros. Atty., v. Tax Comm.        [26 Ohio

seventh section of said act of April 5, 1859, or personal property upon farms and real property not in towns, subject to taxation in the county where the owner or person chargeable with taxes thereon resides, must be returned and taxed in the town or township where the owner resides.

"Steamboats, whose home port is in the county where the owner resides, are subject to taxation in the township where the owner resides, whether such owner be a natural person or a corporation."

In *Cleveland & Western Coal Co.* v. *O'Brien, Treas.,* 98 Ohio St., 14, 120 N. E., 214, the Supreme Court of Ohio reaffirmed the doctrine of *Pelton* v. *Transportation Co.* as to the situs of intangible property of a corporation for purposes of taxation.

The real question in this case is whether this authority upon the vital issue at bar, unmodified and unreversed, establishes the doctrine in Ohio. As to this there can be no doubt, because, whenever occasion arose, not only in Ohio, but elsewhere, the doctrine therein laid down has been almost universally followed. This fact is of such overwhelming force that the contrary decisions laid down by *Home Fire Ins. Co.* v. *Benton,* 106 Ark., 552, 153 S. W., 830, and *Inter Southern Life Ins. Co.* v. *Milliken,* 149 Ky., 516, 149 S. W., 875, L. R. A. 1917A, 460, can be of no avail, on the principle that the construction of Ohio statutes by Ohio courts is paramount, where the logic of the question, as in the *Pelton case, supra,* is insuperable and the holdings are uniform.

Bearing upon this feature of the case, we have approved the reasoning of *Tax Commission of Ohio* v. *National Malleable Castings Co.,* 111 Ohio St., 117, 126, 144 N. E., 604, 606 (35 A. L. R., 1448), a portion of which opinion we quote:

"It would seem, to the end that the certainty, stability, and continuity of the law may be maintained, that the individual opinions of the ever changing personnel of this court may not supplant the composite judgment of the long line of jurists who in turn have constituted the court; that after a period of nearly three-quarters of a century of consistent acquiescence in a legislative interpretation, and over 40 years of judicial interpretation, whatever the opinion the present members of the court entertain as to the correctness of such interpretation, the doctrine of *stare decisis* should apply, to the end that this court may function for the purpose of maintaining the stability and continuity of the law, and the propounding and settling of debatable questions, and not for the purpose of unsettling that which this same court, constituted of a different personnel, has heretofore settled."

Adverting to the *Pelton case, supra,* we reproduce from pages 450, 455, and 456, for the purpose of showing how its pungent and logical analysis applies to the question raised in the case, the following:

"A certificate of incorporation which, under the statute, specifies the place where the principal office of the company is to be located, is conclusive as to the location of such office. * * * For many purposes, a corporation is regarded as having a residence—a certain and fixed domicile. In this state, where corporations are required to designate in their certificates of incorporation the place of the principal office, such office is the domicile or residence of the corporation. The principal office of a corporation, which constitutes its residence or domicile, is not to be determined by the amount of business transacted here or there, but by the place

208    OHIO APPELLATE REPORTS.

Stanton, Pros. Atty., *v.* Tax Comm.    [26 Ohio

designated in the certificate. True, several offices may be established at the place specified in the certificate, as it is sufficient, under this statute, to specify the 'county *or* place.' But where a single office is established in the county, or township, or city, or other place designated, no further inquiry as to the identity of the principal office is admissible. And, as the statute does not require the office building to be specified, it is competent for the corporation to transfer its principal office from one building to another, within the specified county or place, whenever its own convenience or advantage may be subserved. No doubt the exact location of the office should be open and notorious, so that a secret or fraudulent removal would not avail any purpose, yet the particular motive in making the change is not material, as, for instance, whether it was done to avoid taxation. If a natural person may change his residence for such purpose (and of this there can be no doubt), we see no reason why a corporation may not do the same. Such removal is not a fraud against tax laws, unless so declared by express legislation."

This authority of our own Supreme Court is quoted and approved in *Mercantile Trust Co.* v. *Etna Iron Works,* 4 C. C., 579, 586, 2 C. D., 718; *Brown* v. *Noble,* 42 Ohio St., 405, 409; *Sims* v. *Best,* 15 C. D., 149, 1 C. C., (N. S.), 41, 44, and in the Opinion of the Attorney General, rendered May 26, 1913, to the Tax Commission of Ohio, reported in Volume 1, Opinions of Attorney General, 1913, p. 639, and it is again quoted and approved by the Attorney General May 15, 1923. Opinions of Attorney General 1923, Vol. 1, p. 287.

Thus the *Pelton case, supra,* by reason of its sound and immutable principle, has been the con-

tinuing doctrine in Ohio, both as to the courts of Ohio and its highest administrative legal authorities.

This doctrine of the *Pelton case, supra,* has been followed by federal tribunals, as follows:

*Fairbanks Steam Shovel Co.* v. *Wills, Trustee,* 240 U. S., 642, 36 S. Ct., 466, 60 L. Ed., 841. We quote from the opinion not only to show its support and approval of the *Pelton case, supra,* but because it cites *Ex parte Schollenberger,* 96 U. S., 369, 24 L. Ed., 853, wherein is this language of Chief Justice Waite of the Supreme Court of the United States, who, as a distinguished Ohio jurist well acquainted by long experience with Ohio statutes and their construction, may be considered an exceptional authority:

"The statutes of Illinois recognize the propriety of a fixed location for the principal office of a corporation requiring this to be specified in the certificate of organization and to be left unchanged except on formal action by two-thirds in interest of the stockholders. Whether 'principal office' and 'business office' are synonymous is not entirely clear, and we are referred to no decision by the state courts throwing light upon this. But, supposing them to be synonymous, it does not seem to us that the report of the commissioners for stock subscriptions can have the effect of establishing the office in Cass county, for we find no authority in the commissioners to materially change the location of the principal office as formally declared by the organizers.

"We are of opinion that a corporation organized under the laws of Illinois is to be deemed a resident of the state within the meaning of the

Chattel Mortgage Act, and that the county of its residence must be taken to be the county in which its principal office is located. So far as the decisions of the state courts throw light upon the question they bear out this view. [Citing cases.] And a similar view prevails in other jurisdictions. In *Ex parte Schollenberger,* 96 U. S., 369, 377 [24 L. Ed., 853], this court, by Mr. Chief Justice Waite, said: 'A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws.' And in *Galveston, etc., Ry.* v. *Gonzales,* 151 U. S., 496, 504 [14 S. Ct., 401, 38 L. Ed., 248], the court, by Mr. Justice Brown, said: 'In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its *corporate* business is transacted, even though it may transact its most important business in another place.' ''

Supporting this view, we further cite *Western Transportation Company* v. *Scheu,* 19 N. Y., 408; *Union Steamboat Co.* v. *City of Buffalo,* 82 N. Y., 351; *Barrow Steamship Co.* v. *Kane,* 170 U. S., 100, 18 S. Ct., 526, 42 L. Ed., 964; *Shaw* v. *Quincy Mining Co.,* 145 U. S., 444, 12 S. Ct., 935, 36 L. Ed., 768; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Gonzales,* 151 U. S., 496, 14 S. Ct., 401, 38 L. Ed., 248; and *Firestone Tire & Rubber Co.* v. *Vehicle Equipment Co.,* (C. C.), 155 F., 676.

In *Grabsky* v. *Belmont Coal Mining Co.,* 210 F.,

553, decided in the District Court of the United States, in an opinion rendered by Judge Wm. L. Day, after referring to Section 8625 of the General Code of Ohio, the court uses this language supporting and approving the *Pelton case*:

"The highest court of Ohio has said, in the case of *Pelton* v. *Transportation Co.*, 37 Ohio St., 450, hereinbefore cited, that the principal office of a corporation which constitutes its residence or domicile is not to be determined by the amount of business there, but by the place designated in the certificate."

There are numerous other authorities which may be cited, showing unmistakably that under a statute like ours the overwhelming authority in Ohio and the other states of the Union is that the designation in the articles of incorporation of the place where the corporation is to be located is final and conclusive, irrespective of motives, purposes, or consequences, and only by the act of the corporation itself, under the provisions of law, can its own selection as to its own domicile be disputed or denied.

A significant fact in the record is that, notwithstanding the contention of the plaintiff in error, the Union Mortgage Company has paid its taxes for several years on the theory maintained by the company, that the designation of Mentor, Ohio, as the place where its principal office is located, constitutes that place its domicile and situs for the assessment and collection of its taxes on intangible personal property, and the acceptance of the taxes, while it may be passive, is nevertheless such a significant recognition of its claims that

it cannot be said to have no legal force in the determination of the question under discussion.

The court takes judicial notice of the recent passage by both branches of the Legislature of Ohio of a new corporation act, which vitally changes the essential principles of existing law, which act provides, in substance, that the domicile of a corporation is that designated in the articles of incorporation as the place where its principal office is located. This act at this writing has not been approved by the Governor under the laws, but, inasmuch as it shows the legislative intent, there is an inference, in the absence of any express provision to the contrary in the act itself, that the Legislature continued the previous political policy of the state with respect to the creation of corporations, with respect to the requirements that shall be incorporated in the articles of incorporation, and especially with respect to the situs of its principal place of business.

This principle of law is recognized in *Spitzer* v. *Stillings, Exr.,* 109 Ohio St., 297, 142 N. E., 365, and we quote the fourth paragraph of the syllabus, which is as follows:

"Where a statute is construed by a court of last resort having jurisdiction, and such statute is thereafter amended in certain particulars, but remains unchanged so far as the same has been construed and defined by the court, it will be presumed that the Legislature was familiar with such interpretation at the time of such amendment, and that such interpretation was intended to be adopted by such amendment as a part of the law, unless express provision is made for a different construction."

App.]      Sav. & Loan Co. *v.* Clev. Citz. Pub. Co.

The judgment of the lower court is therefore affirmed.

*Judgment affirmed.*

LEVINE, J., concurs.

VICKERY, J., not participating.